IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

BLUE BIRD, LLC
t/a MissNowMrs.com
8570 Brickyard Road      :
Potomac, MD 20854      :

            Plaintiff      :

      vs.      :      Civil No. 322981V

ERIN SIMPSON
2521 Palisade Ave., Apt. 11B      :
Bronx, NY 10463

     :

and      :

MICHAEL SIMPSON      :
2521 Palisade Ave., Apt. 11B
Bronx, NY 10463      :

and      :

WINTER ROCK, LLC
244 Fifth Ave, Suite E286      :
New York, NY 10001-7604

     :

Serve: Erin Simpson      :

     :

         Defendants

RECEIVED
NOV 10 2009
Clerk of the Circuit Court
Montgomery County, Md.

## VERIFIED COMPLAINT
## FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Blue Bird, LLC by its undersigned counsel, sues Defendants and for cause of action states as follows:

### Parties

1.      Plaintiff is a Limited Liability Company organized and existing under the laws of the State of Maryland, with its principal place of business in Montgomery County, Maryland.

2.    Defendant Erin Simpson is an individual who resides in Bronx, New York.

3.    Defendant Michael Simpson is an individual who resides in Bronx, New York.

4.    Defendant Winter Rock, LLC is a Limited Liability Company organized and existing under the laws of the State of New York, with its principal place of business in New York.

<u>Facts Common to All Counts</u>

5. Plaintiff operates an internet business under the name of "MissNowMrs.com" (hereinafter "MNM"). MNM maintains a site on the internet (hereinafter, "the Website") through which it makes available for the use of its customers, under certain terms and conditions, forms, processes and programs to facilitate changing the customer's name on various state and federal licenses and records. The service is particularly directed toward assisting women who have recently married or are about to marry and whose names have or will change as a result of marriage.

6.    Certain of the forms, processes, and instructions provided on Plaintiff's Website were created by Plaintiff and are proprietary to Plaintiff. Other forms and documents provided through Plaintiff's Website were not created by Plaintiff, but were collected, organized and aggregated by Plaintiff and made accessible in one convenient place for a restricted purpose and on restricted terms.

7.    The forms, processes and instructions were compiled and developed by Plaintiff after conducting lengthy and expensive research and programming efforts. As a result of Plaintiff's efforts, the Website is able to offer its name change service for use in all fifty states and with numerous federal agencies. The introductory page of Plaintiff's Website may be freely accessed over the internet; however, the proprietary forms, processes and instructions may be accessed only by entering a secure area of the Website. The secure area of the Website can only

2

be accessed by clients who pay the required fee electronically and who affirmatively agree, through an electronic signature, to abide by an agreement titled Terms of Use (the "Agreement"). The full text of the Agreement is made available for the prospective customer's review from the publicly accessible page of the Website and before the prospective customer pays any fee or makes any commitment. A copy of the Agreement is attached hereto as Exhibit One.

8.     The Agreement provides, *inter alia,*

a.    that the customer may not copy, reproduce, distribute or create derivative works from any information, content, software or material provided through the secure area of the Website;

b.    that the customer will not post, publish, transmit, reproduce, or distribute in any way, information, software or other material obtained through the secure area of the Website for commercial purposes or create any derivative works from such information;

c.    that the customer will not upload, post, publish, transmit, reproduce, or distribute in any way, information, software or other material obtained through the secure area of the Website which is protected by copyright, or other proprietary right, or create any derivative works with respect thereto.

d.    that the Agreement is to be governed by the laws of the State of Maryland; and

e.    that the parties to the Agreement consent to jurisdiction and venue exclusively in the State of Maryland.

9.     The software operating on Plaintiff's Website has the capacity to capture and record data concerning customers who access the site, including the unique internet protocol number assigned to the computer accessing the Website.

accessed Plaintiff's proprietary forms and instructions for all 50 states plus the District of Columbia, the IRS, Passport Office, Social Security and U.S. Postal Service.

17.    Upon entering the secure areas of the Website, in furtherance of the aforesaid conspiracy, one or more of the Defendants tested every corner of MNM services, forms, notification letters and processes.

18.    Upon entering the secure areas of the Website, in furtherance of the aforesaid conspiracy, one or more of the Defendants provided information to generate forms and instructions for multiple versions of the application for Passport name change, IRS and copyrighted notification letters for credit card, utility, insurance, bank, investment, professional licenses and mortgage companies.

19.    The processes undertaken by the Defendants as set forth in the foregoing paragraphs would have only one purpose: to test MNM's programming logic and source code, acquire confidential and proprietary forms, instructions, processes and programs created and owned by Plaintiff.

20.    There would be no purpose for any legitimate customer to access Plaintiff's Website ten times and access proprietary forms and instructions for all 50 states plus the District of Columbia other than to acquire confidential and proprietary forms, instructions, processes and programs compiled, created and owned by Plaintiff.

21.    On October 24, 2007 Winter Rock, LLC was formed in the State of New York listing Defendant Erin Simpson as a member.

22.    Upon information and belief, on December 30, 2007 Erin Simpson, in furtherance of the aforesaid conspiracy, registered the domain name "Name-Change.org" for use in connection with the planned competing business.

10.     Defendant, Michael Simpson purchased Blue Bird, LLC's services on September 29, 2008 and accepted the Agreement by selecting an icon on the publicly available non-secure web page indicating his acceptance of, and willingness to be bound by, the Agreement.

11.     When Defendant Michael Simpson purchased Plaintiff's services using Google Checkout. Defendants Michael Simpson and Erin Simpson conspired to misappropriate information from the secure area of Plaintiff's Website for the purpose of using that information in a competing website which they intended to create, own and operate.

12.     At all material times, and with respect to each of the actions described below, each of the Defendants was acting in concert with, and as an agent for, the others.

13.     The conspiracy undertaken by the Defendants included an agreement among them to access the secure area of Plaintiff's website for the purpose of obtaining the information, forms, instructions and procedures that had been gathered, developed and created by Plaintiff with respect to name-change forms, instructions and procedures for use in all fifty states of the United States, the District of Columbia, and multiple federal agencies.

14.     The Defendants intended, by this method, to compete unfairly with Plaintiff using the fruits of the work Plaintiff had undertaken to accumulate information in a single, conveniently accessible location and to create processes, instructions and forms constituting Plaintiff's proprietary information and intellectual property.

15.     Plaintiff's software associated with the Website recorded the fact that one or more of the Defendants accessed the secure area of the website numerous times during the period September 29, 2008 to November 2, 2008.

16.     Between September 29, 2008 to November 2, 2008 and in furtherance of the aforesaid conspiracy, one or more of the Defendants logged into the account ten times and

4

23.     Upon information and belief Defendant Winter Rock, LLC is the registered owner of www.Name-Change.org.

24.     One or more of the Defendants maintain an internet site under the name Name-Change.org.

25.     Winter Rock and the Name-Change.org website were formed, and are operated, for the purpose of exploiting the proprietary information taken from the secure areas of Plaintiff's Website by one or more of the Defendants and in furtherance of the conspiracy among the Defendants to compete with Plaintiff using Plaintiff's proprietary information.

26.     One or more of the Defendants used Plaintiff's proprietary and confidential information, which they learned and acquired during their numerous visits to the secure areas of Plaintiff's Website between September 29, 2008 and November 2, 2008.

27.     The Defendants used Plaintiff's proprietary information to promote their own commercial purposes.

28.     Defendants Erin Simpson, Michael Simpson and Winter Rock, LLC either knew or should have known that the information acquired from the secure area of Plaintiff's Website was misappropriated from Plaintiff's Website and was being used in the operation of the Name-Change.org website.

29.     Had Plaintiff known that Defendants were surreptitiously mining Plaintiff's Website for proprietary forms, instructions, programs and processes, Plaintiff would not have permitted them to gain access to the secure areas of the Website.

30.     The Agreement accepted by the Defendants as a condition of entering the secure area of Plaintiff's Website, contained a provision in which the parties agreed to be subject to the exclusive jurisdiction of the courts in the State of Maryland.

31.     One or more of the Defendants, acting on behalf of himself or herself and as agent for each of the other Defendants, entered Plaintiff's Website on numerous occasions using unique passwords that were issued for use only by a single user and only on the condition that the user would not violate the Agreement and would not misappropriate Plaintiff's proprietary rights and the information found in the secure area of the Website.

32.     On the multiple occasions when Defendants entered the secure area of Plaintiff's Website, as aforesaid, they did so with the intention of violating the Agreement; with the intention of misappropriating proprietary rights and information belonging to Plaintiff and with the intention of using the misappropriated rights and information for their own commercial gain and to the detriment of Plaintiff.

33.     The conduct of the Defendants, undertaken either directly or through their agents, was intentionally targeted at or focused on Plaintiff, a Maryland limited liability company with its principal place of business in Maryland.

## COUNT I
### (Breach of Contract)

34.     Plaintiff incorporates the allegations of paragraphs 1 through 33 above in this Count I.

35.     Each time one of the Defendants logged into the secure area of Plaintiff's Website, he or she accepted the above referenced Agreement and thus entered into a legally enforceable agreement between each of the said Defendants and Plaintiff.

36.     Pursuant to the Agreement with Plaintiff, Defendants agreed that they would not copy, reproduce, distribute or create derivative works from any information, content, software or material provided by Plaintiff.

37.     Pursuant to the Agreement, Defendants agreed that they would not post, publish, transmit, reproduce, or distribute in any way, information, software or other material obtained through the Website for commercial purposes.

38.     Pursuant to the Agreement, Defendants agreed that they would not upload, post, publish, transmit, reproduce, or distribute in any way, information, software or other material obtained through the Website which is protected by copyright, or other proprietary right, or derivative works with respect thereto.

39.     Pursuant to the Agreement, Defendants agreed that they would not upload post, publish, transmit or distribute in any way any component of the Website or derivative works with respect thereto.

40.     Defendants breached each of the aforesaid contractual obligation by undertaking the following:

    a.  they copied, reproduced and created a derivative work from the information, content or material that was obtained from the secure password protected areas of Plaintiff's Website;

    b.  they uploaded, posted, published, transmitted and distributed components of the Website and derivative works;

    c.  they transmitted and distributed proprietary information and the content from the secure area of Plaintiff's Website;

    d.  they did all of the above for commercial purposes.

41.     As a direct result of Defendants' breach of contract, Plaintiff has suffered and will continue to suffer monetary losses in the form of lost revenues arising out of the unfair competition from the www.Name-Change.org website as well as immediate and irreparable harm to their business through the Defendants' use of Plaintiff's proprietary information and the

exposure of Plaintiff's proprietary information to others, through the Name-Change.org website without the protections afforded to Plaintiff through the Terms of Use agreement and proprietary notices employed by Plaintiff on its Website.

WHEREFORE, Plaintiff requests:

1.    that the court issue an order requiring Defendants to show cause why a preliminary injunction should not be issued enjoining Defendants from using Plaintiff's proprietary information and other information obtained from the secure area of Plaintiff's Website and requiring Defendants, forthwith, to remove the website www.Name-Change.org from the World Wide Web;

2.    that, upon a hearing on the merits, the court issue a permanent injunction enjoining Defendants from using Plaintiff's proprietary information and other information obtained from the secure area of Plaintiff's Website and requiring Defendants to remove the website www.Name-Change.org from the World Wide Web;

3.    that the court enter judgment against Defendants, jointly and severally, in an amount to be determined as the damages suffered by Plaintiff on account of Defendants' breach of contract, plus costs and reasonable attorney's fees;

4.    that the court award such other and further relief as the nature of Plaintiff's cause may require.

**COUNT II**
**(Maryland Uniform Trade Secrets Act)**

42.    Plaintiff incorporates the allegations of paragraphs 1 through 41 above in this Count II.

43.     Information acquired by Defendants during the numerous visits to password protected areas of Plaintiff's Website derived independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

44.     The information acquired by Defendants, as described above, was the subject of reasonable efforts to maintain its secrecy and constituted Plaintiff's trade secrets.

45.     Defendants acquired Plaintiff's trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use; namely, Defendants' explicit agreement to not use information that was only accessible in the password protected areas of the Website and under the Agreement entered into between the parties.

46.     Defendants knew that their knowledge of Plaintiff's trade secrets was acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use.

47.     Defendants misappropriated Plaintiff's trade secrets, within the meaning of Maryland Code Annot., Comm. Law Art., §11-1201(c), by improperly using or disclosing Plaintiff's trade secrets without Plaintiff's express or implied consent.

48.     Defendants' misappropriation of Plaintiff's trade secrets was willful and malicious.

49.     The misappropriation of Plaintiff's trade secrets has caused harm and threatens to cause additional immediate and irreparable harm to Plaintiff, including, without limitation, the exposure of Plaintiff's proprietary information to others, through the Name-Change.org website without the protections afforded to Plaintiff through the Terms of Use agreement and proprietary notices employed by Plaintiff on its Website

WHEREFORE, Plaintiff requests:

10

1.     that the court issue an order requiring Defendants to show cause why a preliminary injunction should not be issued enjoining Defendants from using Plaintiff's trade secrets obtained from the secure area of Plaintiff's Website and requiring Defendants, forthwith, to remove the website www.Name-Change.org from the World Wide Web;

2.     that, upon a hearing on the merits, the court issue a permanent injunction enjoining Defendants from using Plaintiff's trade secrets obtained from the secure area of Plaintiff's Website and requiring Defendants to remove the website www.Name-Change.org from the World Wide Web;

3.     that the court enter judgment for Plaintiff and against Defendants, jointly and severally, in an amount to be determined as the loss suffered by Plaintiff on account of Defendants' misappropriation of Plaintiff's trade secrets;

4.     that the court enter judgment for Plaintiff and against Defendants, jointly and severally, in an amount to be determined as the unjust enrichment caused by Defendants' misappropriation of Plaintiff's trade secrets and not taken into account as part of Plaintiff's actual loss;

5.     that the court award exemplary damages against Defendants, jointly and severally, in an amount equal to two times any award of compensatory damages;

6.     that the court award reasonable attorney's fees to Plaintiff; and

7.     that the court award such other and further relief as the nature of Plaintiff's cause may require.


## COUNT III
### (Deceit)

50.    Plaintiff incorporates the allegations of paragraphs 1 through 49 above in this Count III.

11

51. The Defendants made false representations of material fact; namely, that they had the intention of abiding by the terms of the Agreement, when they gained access to Plaintiff's proprietary information by electronically signing the Agreement.

52. Defendants knew that they had no intention of abiding by the Terms of Use and that the true reason they electronically signed the Agreement was so that they could gain access to Plaintiff's proprietary information for the purpose of misappropriating that information and using it for their own economic gain.

53. Defendants intended that Plaintiff would act in reliance on Defendants' false representation.

54. Plaintiff justifiably relied on Defendants' representations that they intended to abide by the Agreement.

55. Plaintiff has suffered damages and continues to suffer damages as a result of the aforesaid fraud.

WHEREFORE, Plaintiff requests:

1. that the court enter judgment for Plaintiff and against Defendants, jointly and severally, in an amount to be determined as the damages suffered by Plaintiff on account of Defendants' false representations and

2. that the court award such other and further relief as the nature of Plaintiff's cause may require.

## COUNT IV
### (Unfair Competition)

56. Plaintiff incorporates the allegations of paragraphs 1 through 55 above in this Count IV.

57.    Plaintiff expended considerable time, expense and labor to contact each state and federal agency to compile and create the forms, information and instructions necessary to change one's name.

58.    Plaintiff has derived economic benefit from the compilation and creation of these forms, information and instructions in one place and by making the fruits of its labor and expense available for a fee and on certain terms and conditions as to its use.

59.    Defendants fraudulently misappropriated the compiled forms, information and instructions, without any original investigation and without any expense, and are using them as their own for economic advantage in direct competition with Plaintiff.

60.    Defendant's fraudulent misappropriation was done intentionally without legal justification or excuse.

61.    Plaintiff has suffered damages and continues to suffer damages by the aforementioned misappropriation and unfair competition as well as immediate and irreparable harm to its business through the Defendants' use of Plaintiff's the information and forms compiled by Plaintiff and the use of Plaintiff's proprietary information and the exposure of Plaintiff's protected and proprietary information to others, through the www.Name-Change.org website without the protections afforded to Plaintiff through the Terms of Use agreement and proprietary notices employed by Plaintiff on its Website

WHEREFORE, Plaintiff requests:

1.    that the court issue an order requiring Defendants to show cause why a preliminary injunction should not be issued enjoining Defendants from using Plaintiff's protected information obtained from the secure area of Plaintiff's Website and requiring Defendants, forthwith, to remove the website www.Name-Change.org from the World Wide Web;

13

2.    that, upon a hearing on the merits, the court issue a permanent injunction enjoining Defendants from using Plaintiff's protected information obtained from the secure area of Plaintiff's Website and requiring Defendants to remove the website www.Name-Change.org from the World Wide Web;

3.    that the court enter judgment for Plaintiff and against Defendants, jointly and severally, in an amount to be determined as the loss suffered by Plaintiff on account of Defendants' unfair competition;

4.    that the court enter judgment for Plaintiff and against Defendants, jointly and severally, in an amount to be determined as the unjust enrichment caused by Defendants' unfair competition and misappropriation of Plaintiff's protected information and not taken into account as part of Plaintiff's actual loss;

5.    that the court award exemplary damages in an amount to be determined;

6.    that the court award reasonable attorney's fees to Plaintiff; and

7.    that the court award such other and further relief as the nature of Plaintiff's cause may require.

### COUNT V
### (False advertising; Maryland Consumer Protection Act ("MCPA"))

62.    Plaintiff incorporates the allegations of paragraphs 1 through 61 above in this Count V.

63.    Defendants advertise that they provide name change services in the form of auto populating forms for Social Security, IRS, Passport, Postal Service and State's Driver's Licenses.

64.    Defendants advertisement and/or representation on the website www.Name-Change.org is false and misleading in violation of MCPA and Maryland Commercial Code §11-701, *et seq* in that Defendants do not actually offer state specific instructions or forms to change

14

one's name on a driver's license, only brief and general information on visiting each state's respective Department of Motor Vehicles.

65.   Defendants' offer of state driver's license forms when none are available is a knowing misrepresentation of fact with the intent that consumers will rely on the same in the connection with the purchase of Defendant's services.

66.   Only after a consumer has purchased Defendants' services are they made aware that Defendants do not offer state specific forms and instructions.

67.   Plaintiff has suffered damages and continues to suffer damages by the aforementioned unfair and deceptive trade practices and false advertising.

WHEREFORE, Plaintiff requests:

1.      that the court issue an order requiring Defendants to show cause why a preliminary injunction should not be issued enjoining Defendants from advertising driver's license forms and name change services;

2.      that, upon a hearing on the merits, the court issue a permanent injunction enjoining Defendants from advertising driver's license forms and name change services;

3.      that the court enter judgment for Plaintiff and against Defendants, jointly and severally, in an amount to be determined as the loss suffered by Plaintiff on account of Defendants' unfair and deceptive trade practices and false advertising;

4.      that the court award reasonable attorney's fees to Plaintiff; and

5.      that the court award such other and further relief as the nature of Plaintiff's cause may require.

COUNT VI
(Civil Conspiracy)

68.    Plaintiff incorporates the allegations of paragraphs 1 through 67 above in this Count VI.

69.    Defendants Erin Simpson and Michael Simpson agreed to fraudulently access Plaintiff's protected and proprietary forms, programs and processes.

70.    Defendants agreed that the purpose of fraudulently obtaining the protected and proprietary information was to build or to assist in building and developing a competing website that ultimately became the website www.Name-Change.org.

71.    Defendant Michael Simpson as principal and/or agent of Winter Rock, LLC agreed to share the fraudulently obtained information with other principals and members of Winter Rock, LLC including Erin Simpson.

72.    Defendants knowingly participated in the accessing of proprietary information, its misappropriation, and its exploitation for commercial gain implementation in a derivative work and publication on the World Wide Web.

WHEREFORE, Plaintiff requests:

1.    that the court enter judgment for Plaintiff and against Defendants Erin Simpson, Michael Simpson and Winter Rock, LLC, jointly and severally, in an amount to be determined as the damages suffered by Plaintiff on account of Defendants' conspiracy;

2.    that the court award such other and further relief as the nature of Plaintiff's cause may require.

16

I SOLEMNLY DECLARE AND AFFIRM, UNDER THE PENALTIES OF PERJURY, THAT THE STATEMENTS OF FACT SET FORTH IN THE FOREGOING COMPLAINT ARE TRUE, TO THE BEST OF MY INFORMATION, KNOWELDGE AND BELIEF.

CHRISTOPHER C. TATE
Member, Blue Bird, LLC

Respectfully submitted,

William D. Day
Gill Sippel & Gallagher
98 Church Street
Rockville, MD 20850
301-251-9200

Attorney for Plaintiff

## JURY DEMAND

Plaintiff, Blue Bird, LLC, by its undersigned counsel, demands trial by jury on all claims raised in the Complaint.

William D. Day

17